IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No: 3:08-CV-303

ANGELA MITHCELL, on behalf of herself and all others similarly situated,

    Plaintiff,

v.

HOME LOAN CENTER, INC., d/b/a LENDINGTREE LOANS, LENDINGTREE LLC, and LENDINGTREE, INC.

    Defendants.

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(B)(6)

## I. SUMMARY OF ARGUMENT

Defendant LendingTree, LLC ("**LendingTree**") is an online service, allowing potential mortgage borrowers to obtain multiple quotes from interested lenders. LendingTree does not charge consumers any fee for these services. Home Loan Center, Inc. d/b/a LendingTree Loans ("**LendingTree Loans**") is a subsidiary of LendingTree engaged in direct lending. This Motion to Dismiss is entered on behalf of both Defendants.[1]

Plaintiff Angela Mitchell (**"Mitchell"**) chose to take advantage of LendingTree's referral service. As consideration for using LendingTree's service, Mitchell agreed to submit any dispute she might have with LendingTree, or "arising out of the use of this Web site" to arbitration. Mitchell further agreed to pursue any such dispute in an individual action, not in a class action.

---

[1] While "LendingTree, Inc" is also named as a Defendant, no such entity exists.

Mitchell is well-aware of the agreement into which she entered. As explained below, counsel for Mitchell has twice cited to and relied upon the venue provisions of the agreement between Mitchell and LendingTree and its affiliates. But in direct violation of other provisions in the same agreement, Mitchell insists on prosecuting this putative class action in federal court, rather than the agreed-to individual action in arbitration. LendingTree and LendingTree Loans bring this Motion to dismiss the present suit and to compel the parties to individual arbitration.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. MITCHELL AGREED TO A TERMS OF USE AGREEMENT GOVERNING LENDINGTREE'S WEBSITE AND FREE ONLINE SERVICES.

Every person who uses the LendingTree Web site agrees to a Terms of Use Agreement ("**TOU**" or the "**Terms of Use**"). Mitchell submitted a mortgage request to LendingTree via LendingTree's Web site on February 12, 2006. (Affidavit of Donald Norton, attached hereto as Ex. A., ¶7.)[2] Attachment 1 to Donald Norton's Affidavit is a copy of the TOU as constituted on February 12, 2006. (Ex. A ¶ 8.) The very first paragraph of the TOU, all in bold, tells the consumer:

> **This agreement contains an agreement to arbitrate all Claims and disclaimers of warranties and liability. These provisions form an essential basis of our bargain. If you do not agree to these terms and conditions, do not access this Web site.**

(Ex. A, Att. 1.) The scope of the arbitration agreement is very broad, encompassing "[a]ny claim or controversy arising out of or relating to the use of this Web site" and "any acts or omissions for which you may contend LendingTree is liable." (Id.) Per the TOU, all such disputes "shall

---

[2] In her Complaint, Mitchell does not allege specifically when she submitted a loan request to LendingTree; however, as indicated in Donald Norton's affidavit, LendingTree's records indicate that Mitchell submitted a partially completed loan request on February 12, 2006. (Ex. A ¶ 7.) Therefore, all references to the TOU in this Memo are to the TOU in effect on February 12, 2006.

be finally, and exclusively, settled by arbitration" before the American Arbitration Association ("AAA") under the AAA commercial arbitration rules in effect at that time. (Id.)

The TOU makes very clear that the envisioned arbitration will resolve individual disputes, and that no class arbitration will be allowed:

> **THIS AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN YOU AND LENDINGTREE WILL BE RESOLVED BY <u>BINDING ARBITRATION</u>. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS. YOU ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN OR BRING CLASS ACTIONS.**

(Id.) (all emphasis as in original).

Any consumer who uses LendingTree's Web site agrees to these TOU. Moreover, if the Web site user goes on to submit a request, as did Mitchell, she must actively agree to the TOU. As an unavoidable part of the request process, the user <u>must</u> indicate that she "agree[s] to and accept[s]" the Terms of Use Agreement by checking a box conspicuously labeled "I agree . . ." before proceeding to the request submission page. (Ex. A, Att. 2.) The user can click on a hyperlink prominently labeled "Terms of Use" at this point in the process, which again connects the user to the full TOU. (Id.) Further, the user is directed to print these terms for her records before proceeding. (Id.) The user cannot continue in this process without agreeing to these terms. (Ex. A.) Therefore, to obtain free services from LendingTree, Mitchell agreed to these Terms of Use.

### B. IN VIOLATION OF THE AGREED-TO TERMS OF USE, MITCHELL SUED LENDINGTREE AND LENDING TREE LOANS IN A PUTATIVE CLASS ACTION.

In violation of the Terms of Use, on April 28, 2008, Mitchell sued LendingTree and Lending Tree Loans before the Western District of Oklahoma in a putative class action. Mitchell alleges that LendingTree's employees "divulged personal information of the Class" to outside lenders, and that this information included "name, address, telephone numbers, social security

3

Case 3:08-cv-00303-FDW-DCK    Document 34    Filed 07/16/2008    Page 3 of 19

numbers, income and employment information." (Compl. ¶1.) Plaintiff alleges three causes of action, each predicated on an asserted duty owed by LendingTree and/or LendingTree Loans to the applicant and on a perceived defect in LendingTree and/or LendingTree Loan's conduct with respect to applicant information. Plaintiff does not allege that any criminal *has* attempted to impersonate Mitchell for any purpose. Mitchell merely alleges that Defendants' handling of her information made such hypothetical criminal attack more likely.

By letter dated June 18, 2008, LendingTree, through counsel, requested that Mitchell honor the terms of the agreement by which she used LendingTree's service, dismiss this suit, and, should she deem it necessary, submit her claims to binding, individual (non-class) arbitration. (Ex. B, Demand Letter.) Mitchell refused to do so. However, Mitchell did move the next day to transfer the action to the Western District of North Carolina. (Ex. C, Transfer Motion). In support of that Motion, Mitchell cited to, relied upon, and attached in full the Terms of Use, which specified a North Carolina choice of venue. Plaintiff's Motion to Transfer was granted.

The <u>Mitchell</u> action is one of eight putative national class actions that followed the announcement by LendingTree that it had been the victim of data theft.[3] (Copies of these Complaints are attached as Ex. D). There is currently a contested motion before the Judicial Panel for Multidistrict Litigation for consolidation of all these cases for the purposes of pre-trial administration in the Western District of North Carolina. (Ex. E.). Mitchell has submitted to the Panel a pleading in support of the motion. (Ex. F). In that filing, Mitchell again relied on the

---

[3] <u>Bercaw v. LendingTree LLC</u>, No. 8:08-cv-660 (C.D.Cal.); <u>Bradley v. LendingTree LLC</u>, No. 8:08-cv-755 (C.D. Cal.); <u>Carson v. LendingTree LLC</u>, No. 3:08-cv-247 (W.D.N.C.); <u>Garcia v. Lending Tree LLC</u>, No. 3:08-cv-4551 (S.D.N.Y); <u>Miller v. Lending Tree LLC</u>, No. 1:08-cv-2300 (N.D. Ill.); <u>Shaver v. LendingTree, LLC</u>, No. 8:08-cv-756 (C.D. Cal.), and <u>Spinozzi v. LendingTree LLC</u>, No. 3:08-cv-229 (W.D.N.C.).

Terms of Use, noting "Defendants' choice of venue provision in the 'Terms of Use' agreement provides that the Western District of North Carolina is the proper place for Mitchell and the class of similarly situated people. (Id. at ¶6). Mitchell later notes in her attached memorandum to the Panel that "all users of [LendingTree's] website must accept [the Terms of Use] before their loan application will be processed." (Ex. G, at 2).

Despite citing to the Terms of Use for her own purposes, Mitchell has to date refused to dismiss the present action and bring it, if need be, via individual arbitration.

### III. THIS ACTION MUST BE DISMISSED IN LIGHT OF PLAINTIFF'S CONTRACTUAL DUTY TO SUBMIT ALL DISPUTES WITH LENDINGTREE TO ARBITRATION.

#### A. THIS MOTION MUST BE ANALYZED UNDER THE FEDERAL ARBITRATION ACT.

The Federal Arbitration Act, 9 U.S.C. § 1 et seq., establishes a "national policy favoring arbitration." Southland Fin. Servs., Inc. v. Keating, 465 U.S. 1, 10 (1984). The FAA entails "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect…is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1993).

> Section 2 of the FAA provides in pertinent part:
>> A written provision of . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be **valid, irrevocable, and enforceable**, save upon such grounds as exists at law or in equity for the revocation of any contract.

9 U.S.C. §2 (emphasis added). In enacting Section 2, Congress "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Southland, 465 U.S. at 10. The United States Supreme Court has

recognized that Congress enacted the FAA for the benefit of businesses and consumers alike. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 280 (1995). "Congress has thus mandated the enforcement of arbitration agreements." Southland, 465 U.S. at 10.

> **B. PLAINTIFF'S CLAIMS MUST BE ARBITRATED BECAUSE SHE EXECUTED A CONTRACT WHICH INCORPORATED A VALID ARBITRATION AGREEMENT AND HER CLAIMS FALL WITHIN THE COMPREHENSIVE SCOPE OF THAT AGREEMENT.**

When deciding whether a matter must be submitted to arbitration, the court must determine: (1) whether a valid agreement to arbitrate exists, and (2) whether the specific dispute falls within the substantive scope of that agreement. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985). If the court concludes that there is a valid arbitration agreement and the matter falls within that agreement's scope, it must refer the case to arbitration without reviewing the merits.

The burden of establishing that the claims at issue are unsuitable for arbitration falls on Plaintiff as the party opposed to arbitration. Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 91 (2000). The burden is not met by "generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants.'" Id. at 89-90.

Under the United States Supreme Court's two-pronged Mitsubishi Motors analysis, Mitchell must be compelled to arbitrate. First, Mitchell manifested her consent to the TOU in consideration for obtaining the use of LendingTree's online services. In fact, a user's submission of an application to a website has been deemed agreement to abide by the terms of use of the website, e.g., forum selection clauses. Fru-Con Const. Corp. v. County of Arlington, No. 1:06CV1, 2006 WL 273583 at *2 (E.D.Va. Jan. 30, 2006) ("Reasoning that the user's explicit agreement to the terms was not a prerequisite to their enforceability, the court held that the user's

utilization of the website's service after learning of the terms constituted an acceptance of the terms.") Further, "[a] nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause." Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000). Here, the TOU Mitchell consented to calls for all disputes arising from the use of those services to be submitted to binding, individual (non-class) arbitration.

Second, Plaintiff's challenge to LendingTree and LendingTree Loans's handling of her information clearly constitutes a claim that falls within the broad scope of the TOU's arbitration provision. The TOU applies to "[a]ny claim or controversy arising out of or relating to the use of this Web site" and, independently, to "any acts or omissions for which you may contend LendingTree is liable." (Ex. A, Att. 1.) Plaintiff alleges that in submitting an application on LendingTree's Web site, LendingTree required her to provide certain personal information, and that in maintaining the information submitted on the Web site, LendingTree and/or LendingTree Loans did an inadequate job. Mitchell's Complaint contains numerous allegations of acts and omissions for which Mitchell asks that LendingTree be held liable. The arbitration provision covers these complaints and contains no exception for security- or data-related concerns. The present action falls squarely within the range of those disputes intended, by the parties' prior written agreement, to be resolved through arbitration.

There is no ambiguity surrounding the issue of coverage. However, even if there were any issue of ambiguity, the ambiguity would have to be resolved in the favor of the movant. "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" Zandford v. Prudential-Bache Secs., Inc., 112 F.3d 723, 726 (4th Cir. 1997) (citation and quotation marks omitted). "Motions to compel arbitration under an

arbitration clause should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Id.

### C. THE FAA REQUIRES ARBITRATION EVEN WHERE A PLAINTIFF RAISES CONSUMER PROTECTION CLAIMS.

Under the FAA, an arbitration agreement cannot be held invalid merely because the plaintiff's claim sounds in consumer protection law. The United States Supreme Court in Randolph held that "even claims arising under a statute designed to further important social polices may be arbitrated[.]" 531 U.S. at 89. In Randolph, the Court noted, followed, and affirmed a long line of precedents in which consumer protection claims have been compelled into arbitration. See, e.g., Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477 (1989) (Securities Act of 1933); Shearson/American Express Inc. v. McMahon, 482 U.S. 220 (1987) (Securities Exchange Act of 1934 and RICO); Mitsubishi Motors, 473 U.S. at 614 (Sherman Act).

Even consumer class action allegations of criminal fraud and criminal usury may be vindicated in arbitration. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006). In Buckeye, plaintiff alleged that the very contract containing the disputed arbitration clause was void for illegality in that the contract "violated various Florida lending and consumer-protection laws, rendering it criminal on its face." Id. at 1207. More specifically, plaintiff charged that defendants, through the contract at issue, violated Florida's Lending Practices Act, Consumer Finance Act, Deceptive and Unfair Trade Practices Act, and Civil Remedies for Criminal Practices Act. See Plaintiffs-Respondents' Br. in Opp'n to Cert., No. 04-1264, 2005 WL 1285615 at *5 (May 23, 2005) (attached here as Ex. H). The United States Supreme Court,

8

citing extensively to the Federal Arbitration Act, nevertheless compelled arbitration of all these claims.

Fourth Circuit law is in accord, compelling consumer protection claims to arbitration where a predispute arbitration provision exists. See, e.g., Adkins v. Labor Ready, Inc., 303 F.3d 496, 506 (4th Cir. 2002) (compelling individual arbitration of Fair Labor Standards Act claims); Snowden v. CheckPoint Check Cashing, 290 F.3d 631, 638 (4th Cir. 2002) (compelling individual arbitration of TILA and RICO claims); Gilmer v. Interstate/Johnson Lane Corp., 895 F.2d 195, 196 (4th Cir. 1990) (compelling individual arbitration federal ADEA claims), aff'd, 500 U.S. 20 (1991).

Mitchell's claims can be effectively vindicated in arbitration, whether they sound in federal or state law, common law, or statute.

### D. THE FAA REQUIRES ARBITRATION EVEN WHERE THE CLAUSE IN QUESTION WILL REQUIRE THAT PLAINTIFF PROCEED AS AN INDIVIDUAL.

The Fourth Circuit has repeatedly held that a plaintiff cannot defeat a binding arbitration agreement simply by filing suit in a putative class action. See, e.g., Adkins, 303 F.3d at 502 (enforcing arbitration agreement in West Virginia employment contract of adhesion, noting plaintiff's "inability to bring a class action…cannot by itself suffice to defeat the strong congressional preference for an arbitral forum"); Snowden, 290 F.3d at 638 (enforcing arbitration agreement in Maryland consumer lending agreement, despite plaintiff's objection that the agreement disallowed class actions).

In Adkins, the Fourth Circuit cited with approval to a prior decision of the Third Circuit, Johnson v. West Suburban Bank. 225 F.3d 366, 369 (3d Cir. 2000). The Third Circuit, explaining why it compelled non-class arbitration of putative class action claims under TILA and the Electronic Fund Transfer Act ("EFTA"), said:

> While it may be true that the benefits of proceeding as a class are unavailable in arbitration, neither statute confers upon plaintiffs the right to proceed as a class. Instead, the right is merely a procedural one, arising under Fed.R.Civ.P. 23, that may be waived by agreeing to an arbitration clause. In sum, because we can discern no congressional intent to preclude the enforcement of arbitration clauses in either statute's text, legislative history, or purpose, we hold that such clauses are effective even though they may render class actions to pursue statutory claims under the TILA or the EFTA unavailable.

Adkins, 303 F.3d at 502. Likewise, there is nothing in common law to suggest the ability to proceed in a class format is a substantive right, rather than a matter of mere procedure.

In Snowden, the Fourth Circuit held, "we reject Snowden's argument that the Arbitration Agreement is unenforceable as unconscionable because without the class action vehicle, she will be unable to maintain her legal representation given the small amount of her individual damages." 290 F.3d at 638. In large part, the Fourth Circuit rejected this argument because "attorney's fees are recoverable by a prevailing plaintiff in a TILA action and a civil RICO action[.]" Id. (citation omitted); accord Goetsch v. Shell Oil Co., 197 F.R.D. 574 (W.D.N.C. 2000) (compelling individual arbitration of putative consumer class action brought under TILA and Fair Debt Collection Practices Act); Jones v. Genus Credit Mgmt. Corp., 353 F.Supp.2d 598, 603 (D. Md. 2005) (compelling individual arbitration of consumer class action claims per contract, noting "The Fourth Circuit has directly held that such a waiver is valid in a consumer case, such as this one, in which claims are asserted under fee-shifting statutes"); Miller v. Equifirst Corp. of WV, No. 2:00-0335, 2006 WL 2571634 at *16 n.2 (S.D.W.Va. Sept. 5, 2006) (noting "a number of decisions from federal courts of appeal, including the Fourth Circuit, in which the waiver of the right to proceed by class action in the context of an agreement to arbitrate has been upheld"). Under the TOU, Plaintiff would be entitled to attorney's fees for any cause of action in which she is the prevailing party. (Ex. A, Att. 1.) Every Count of the

Complaint is subject to the fee-shifting provisions noted as beneficial by the Fourth Circuit. Therefore, individual arbitration is an appropriate forum for vindication of her claims.

Mitchell can vindicate her interests fully in individual arbitration and should not be allowed to press her claims anywhere else.

E. **NORTH CAROLINA LAW FAVORS ENFORCEMENT OF ARBITRATION AGREEMENTS.**

Having no viable argument under federal law to evade the binding arbitration provision and class action waiver, Mitchell may argue that the TOU is somehow unconscionable as a matter of state law. The state law selected by the parties was that of North Carolina. (Ex. A, Att. 1.) Under North Carolina law, the TOU is enforceable, and this Motion must be granted.

North Carolina's practice of enforcing contracts as written applies equally to consumer contracts with arbitration clauses. North Carolina contract law does not allow parties to pick and choose which provisions they would like to honor. "Where the language of a contract is plain and unambiguous, construction of the agreement is a matter of law; and the court may not ignore or delete any of its provisions[.]" Burrell v. Sparkkles Reconstruction Co., 657 S.E.2d 712, 716 (N.C. App. 2008). "When competent parties contract at arms length upon a lawful subject, as to them the contract is the law of their case." Suits v. Old Equity Life Ins. Co., 249 N.C. 383, 386, 106 S.E.2d 579 (1959).

By agreeing to the TOU, including not just the venue provisions but also the class action waiver and arbitration clause, Mitchell obtained the benefit of LendingTree's services, which were free of charge to her. Mitchell cannot accrue those benefits and then shrug off the correlative obligations. See, e.g., Pure Oil Co. of the Carolinas v. Baars, 224 N.C. 612, 31 S.E.2d 854 (1944). In Pure Oil, the defendants acquired a house by means of a deed of trust. The deed of trust vested in a third party a later option to purchase the house. Defendants

11

objected that the option provision should be deemed in violation of the rule against perpetuities and stricken from the deed. The trial court held, and the North Carolina Supreme Court affirmed, that the deed and option were all part of one transaction and that the defendants could not keep the deed yet strike the option. See id.

LendingTree's TOU tells all users in the first paragraph that:

**This agreement contains an agreement to arbitrate all claims and disclaimers of warranties and liability. These provisions form an essential basis of our bargain.**

(Ex. A, Att. 1.) In the case at bar, Plaintiff cannot forsake the agreement to arbitrate, having already received the benefit of LendingTree's services. The agreement to arbitrate is "an essential basis of our bargain," as Plaintiff was told from the outset.

This is hardly the first time that a party to a contract under North Carolina law calling for arbitration tried to avoid that obligation by asserting that the arbitration clause is unconscionable. Arbitration agreements have been enforced by the courts over a wide range of objections. Miller v. Two State Constr. Co., 118 N.C. App. 412, 455 S.E.2d 678 (1995) (finding arbitration agreement was not unconscionable merely because it entailed a waiver of jury rights); Rodgers Bldrs., Inc. v. McQueen, 76 N.C. App. 16, 331 S.E.2d 726 (1985) (finding arbitration agreement was not unconscionable merely because it encompasses claims of alleged tortious conduct and/or deceptive and unfair practices) (1986); Raper v. Oliver House, LLC, 180 N.C. App. 414, 421, 637 S.E.2d 551 (N.C. App. 2006) (reversing a trial court ruling that the arbitration clause, in a nursing home admission agreement, was unconscionable, despite issues concerning senior care being matter of public interest).

No one compelled Plaintiff to obtain mortgage quotes. No one compelled Plaintiff to use an online service like LendingTree's to help with this process. Certainly, no one compelled

Plaintiff to use LendingTree's site as opposed to the sites of LendingTree's many competitors. Plaintiff had a series of meaningful choices; she chose to use LendingTree's free service, in the process agreeing to non-class arbitration; Plaintiff must be bound by that choice. See, e.g., Revels v. Miss N.C. Pageant Org., 176 N.C. App. 730, 735, 627 S.E.2d 280 (2006). In Revels, a beauty contestant signed an entry form that bound her to arbitrate any disputes she has with the pageant. The plaintiff still brought a suit in federal court. The pageant moved to compel arbitration, and the plaintiff responded, arguing "that the arbitration clause was unenforceable where the inequality of bargaining power deprived her of a meaningful choice." Id. The North Carolina Court of Appeals rejected this argument. "Where Revels could enter other pageants or choose to not enter a pageant at all, we find that this contention lacks merit." Id. Like Revels, Plaintiff must be held to the consequences of her freely-chosen bargain.

In seeking to evade her contractual obligations, Plaintiff may cite to Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93 (2008). Tillman is the first and only case by a North Carolina appellate court to hold any contract unconscionable. Id. at 111-12 (Newby, J., in dissent) ("For the first time in our history, a North Carolina appellate court has found a contract to be unconscionable"). In Tillman, a sharply divided North Carolina Supreme Court found that an arbitration clause in a particular consumer form contract was both procedurally and substantively unconscionable, and therefore could not be enforced. Tillman does not support Mitchell's opposition to the enforcement of the TOU.

First, as the majority in Tillman noted, "A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability." Id. at 102. (emphasis added). Here, the TOU is neither procedurally nor substantively unconscionable. The main procedural unconscionability in Tillman was: "[Mrs.] Tillman and [Mrs.] Richardson were

rushed through the loan closings, and the Commercial Credit loan officer indicated where [Mrs.] Tillman and [Mrs.] Richardson were to sign or initial the loan documents. There was no mention of credit insurance or the arbitration clause at the loan closings." Id. at 103. Here, the situation as to the LendingTree TOU was wholly different. Mitchell was not being "rushed through" anything in submitting a request to LendingTree but was taking just the first tentative step in window-shopping for a new mortgage loan. Mitchell had all the time she wanted to print and read the TOU, or, since they were provided in electronic format, to even enlarge the TOU's font size or search for important key terms. Additionally, the arbitration provision was not hidden in the TOU but was highlighted in the agreement's first paragraph. The TOU is simply not procedurally unconscionable.

Likewise, the TOU is not substantively unconscionable. The first stage of the Tillman analysis puts the burden on Plaintiff to show that she, financially, cannot afford to press her claims in arbitration.[4] The second stage of Tillman's substantive unscionability analysis looks to the expenses a consumer may have to bear in proceeding in arbitration. While both the Tillman and LendingTree arbitration clauses incorporate by reference AAA rules, the Tillman agreement negated those rules by saying that AAA rules would not apply in the event of a conflict with the original contract language. The LendingTree agreement does precisely the opposite by fully embracing the AAA rules.

---

[4] Of course, even if this Plaintiff could make this showing with respect to her particular economic condition, that would not allow any other plaintiff or putative class member to skip the same step of substantive unconscionability analysis. When "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Randolph, 531 U.S. at 91.

Under AAA's Supplementary Procedures for Consumer-Related Disputes[5] the consumer's responsibility for arbitrator fees is capped at a low amount: at $125 for claims under $10,000, and at $375 for claims under $75,000. (This is less than, or comparable to, the $350 civil filing fee charged by Article III courts to every civil litigant.) AAA has further reserved for itself the right to determine the allocation of costs and expenses between the consumer and the provider of goods and services, without regard to pre-dispute agreements.[6] While AAA has not promulgated bright-line rules for these determinations, AAA does note that, "In some cases, the need to ensure reasonable costs for the Consumer will require the Provider of goods or services to subsidize the costs of ADR which is mandated by the agreement[.]"[7] AAA makes the "Practical Suggestion," which LendingTree intends to follow as to Mitchell, that, "[i]n the event that an ADR procedure is mandated by the Provider of goods and services and the Consumer demonstrates an inability to pay all or part of the costs of the procedure, the Provider should front such costs subject to allocation in the arbitration award or mediation settlement."[8]

In addition, even in "cases where an AAA administrative fee applies, parties are eligible for consideration for a waiver or deferral of the administration fee if their annual gross income falls below 200% of the federal poverty guidelines."[9] And "[e]ven if no waiver or deferral of administrative fees has been granted or requested, a party may make a request for a pro bono or reduced rate arbitrator at the time of the filing of the case or at any time up to the point that an

---

[5] See, Consumer-Related Disputes Supplementary Procedures (effective September 15, 2005) (attached here as Ex. I).

[6] See, Consumer Due Process Protocol, Principle 6, Reasonable Costs (attached here as Ex. J).

[7] Id.

[8] Id.

[9] See, Administrative Fee Waivers and Pro Bono Arbitrators (attached here as Ex. K).

arbitrator is appointed."[10] Given this panoply of protections, all of which the TOU incorporates by reference, "the facts available to the Court at this time do not provide a basis for concluding that the [consumer] likely will be forced to shoulder costs that they cannot bear. And, speculation about the way that the [arbitrator] might handle the [consumer's] complaint does not justify ruling that the [consumer's] arbitration agreement is unconscionable." March v. Tysinger Motor Co., No. 3:07-CV-508, 2007 WL 4358339 at *5 (E.D.Va. Dec. 12, 2007) (compelling individual arbitration to National Arbitration Forum of putative consumer class action). Tillman is not on point.

### G. TILLMAN SHOULD BE READ NARROWLY AND ANY EXPANSIVE READING OF TILLMAN IS PREEMPTED THE FAA

Tillman is best understood as a narrow opinion addressing a specific set of facts before the Court, facts of alleged procedural and substantive unconscionability not present here. Reading Tillman this way avoids conflict with and preemption by the FAA. As the dissent in Tillman properly noted:

> Although the majority ostensibly applies general principles of state contract law to render this arbitration agreement unconscionable, in effect the majority finds it unconscionable precisely because it is an agreement to arbitrate. By holding that the collective effect of provisions unique to arbitration agreements renders the instant agreement unconscionable, the majority treats this contract differently from other contracts. Such an approach is precluded by federal law.

362 N.C. at 112 (Newby, J., dissenting.)

Therefore, Tillman must be read narrowly, to avoid conflict between federal and North Carolina law. Such conflicts have arisen before in North Carolina, resulting in a finding that state laws that impede arbitration are preempted by the FAA. See, e.g., Aspen Spa Props., LLC v. Int'l Design Concepts, LLC, 527 F.Supp.2d 469 (E.D.N.C. 2007) (finding FAA preempted

---

[10] Id.

North Carolina's statute forbidding out-of-state arbitrations); accord Schultz v. AT & T Wireless Servs., Inc., 376 F.Supp.2d 685, 689-60 (N.D.W.Va. 2005) (finding FAA preempted decision from Supreme Court of Appeals of West Virginia which had imposed heightened scrutiny on arbitration agreements).[11]

## VI.     CONCLUSION

For all of the foregoing reasons, LendingTree and LendingTree Loans respectfully request that Plaintiff's Complaint be dismissed and that Plaintiff be directed that if she wishes to pursue the matter further, she must do so by submitting to arbitration her individual claims against Defendants, and further requests reimbursement of attorney's fees expended to prosecute this Motion, which merely seeks to compel Mitchell to live up to the terms of her agreement.

---

[11] However, a finding of preemption is a last resort, and if Tillman can be read so as to coexist with the FAA, that is the appropriate reading.

This 16th day of July, 2008.

                Respectfully submitted,

                s/ Robert E. Harrington
                Robert E. Harrington
                N.C. Bar No. 26967
                rharrington@rbh.com
                Jonathan C. Krisko
                N.C. Bar No. 28625
                jkrisko@rbh.com
                **ROBINSON, BRADSHAW & HINSON, P.A.**
                101 North Tryon Street, Suite 1900
                Charlotte, North Carolina 28246-1900
                (704) 377-2536

                Mark S. Melodia (admission *pro hac vice* pending)
                mmelodia@reedsmith.com
                Paul J. Bond (admission *pro hac vice* pending)
                pbond@reedsmith.com
                **REED SMITH LLP**
                Princeton Forrestal Village
                136 Main Street
                Princeton, New Jersey 08540
                (609) 987-0050

                *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2008, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(B)(6)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Billy D. Griffin
> oculaw2@aol.com
>
> Jason B. Reynolds
> jasrey@aol.com
>
> Gary W. Jackson
> gjackson@ncadvocates.com

This 16th day of July, 2008.

> s/ Robert E. Harrington
> Robert E. Harrington
> ROBINSON, BRADSHAW & HINSON, P.A.
> 101 North Tryon Street, Suite 1900
> Charlotte, North Carolina 28246-1900
> (704) 377-2536
> rharrington@rbh.com

19

Case 3:08-cv-00303-FDW-DCK   Document 34   Filed 07/16/2008   Page 19 of 19